**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LINDA MARLENE RUBACK,**

                                            **Plaintiff,**

        **vs.**                                                    **6:11-CV-770**
                                                                      **(MAD)**

**MICHAEL J. ASTRUE, Commissioner of**
**Social Security,**

                                            **Defendant.**
_____

**APPEARANCES:**                           **OF COUNSEL:**

THE SILVERMAN LAW FIRM              Lisa M. Tumminelli, Esq.
527 State Street
Schenectady, New York 12305
_Attorneys for Plaintiff_

Social Security Administration          Elizabeth D. Rothstein, Esq.
Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
_Attorneys for Defendant_

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

        Plaintiff Linda Marlene Ruback, brings the above-captioned action pursuant to 42 U.S.C.

§ 405(g), seeking a review of the Commissioner of Social Security's decision to deny her

application for disability insurance benefits ("DIB").

## PROCEDURAL BACKGROUND

On May 14, 2007, plaintiff filed an application for DIB benefits.  (Administrative Transcript at p. 103).[1]  Plaintiff was 56 years old at the time of the application with prior work experience as an office manager.  (T. 116-117).  Plaintiff claimed that she was disabled, beginning on April 1, 2006 due to "clots in veins (superior vein), thick blood, and cyst/small mass (non-cancerous) in small intestine", gastrointestinal issues and back pain. (T. 116, 152).  On October 23, 2007, plaintiff's application was denied and plaintiff requested a hearing by an ALJ which was held on July 8, 2009.  (T. 30, 56).  Plaintiff appeared with an attorney. (T. 14).  On August 6, 2009, the ALJ issued a decision denying plaintiff's claim for benefits.  (T. 14-27). The Appeals Council denied plaintiff's request for review on May 16, 2011 making the ALJ's decision the final determination of the Commissioner. (T. 1-6).  This action followed.

## DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities."  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of

---

[1]  "(T. )" refers to pages of the administrative transcript, Dkt. No. 7.

> proof on the first four steps, while the Social Security
> Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311

F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal

citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the

factual findings are not supported by "substantial evidence."  42 U.S.C. § 405(g); *see also Shaw*,

221 F.3d at 131.  Substantial evidence has been interpreted to mean "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Id.*  The Court may also set

aside the Commissioner's decision when it is based upon legal error.  *Rosa v. Callahan*, 168 F.3d

72, 77 (2d Cir. 1999).

The ALJ found at step one that plaintiff had not engaged in substantial gainful activity

since April 1, 2006.  (T. 16).  At step two, the ALJ concluded that plaintiff suffered from

degenerative disc disease, gastritis and pancreatitis which qualified as "severe impairments"

within the meaning of the Social Security Regulations (the "Regulations").  (T. 16).  At the third

step of the analysis, the ALJ determined that plaintiff's impairments did not meet or equal the

severity of any impairment listed in Appendix 1 of the Regulations.  (T. 19).  The ALJ found that

plaintiff had the residual functional capacity ("RFC") to, "perform the full range of light work"

and found that plaintiff had the "ability to stand and walk for six hours per workday, sit for six

hours per workday, lift 20 pounds occasionally and 10 pounds frequently". (T. 19).   At step four,

the ALJ concluded that plaintiff is capable of performing past relevant work as an office manager.

(T. 22). Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the

Social Security Act.  (T. 20).

In seeking federal judicial review of the Commissioner's decision, plaintiff argues that: (1) the Commissioner erred by failing to find that plaintiff's anxiety and depression were "severe impairments"; (2) the ALJ afforded improper evidentiary weight to the opinions of the state agency consultative physician; (3) the ALJ did not properly assess plaintiff's credibility; (4) the ALJ's RFC assessment is not supported by substantial evidence; and (5) the ALJ erred when he concluded that plaintiff could perform her past relevant work. (Dkt. No. 10).

## I.        Severity of Plaintiff's Impairments at Step Two

"The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416 .925(a).  If a claimant's impairment or combination of impairments meets or equals a listed impairment, the evaluation process is concluded and the claimant is considered disabled without considering the claimant's age, education, or work experience. *Campbell v. Astrue*, 2009 WL 2152314, at *4 (N.D.N.Y. 2009) (citing 20 C .F.R. § 416.920(a)(4)(iii)).  A "severe" impairment is one that significantly limits an individual's physical or mental ability to do basic work activities.  *Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010) (citing 20 C.F.R. §§ 404.1520( c ), 416.920( c )). The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include,

> (1) Physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b); *see also* Social Security Ruling 85–28, 1985 WL 56856, at *3–4, Titles II and XVI: Medical Impairments That Are Not Severe (S.S.A.1985).

Plaintiff has the burden at step two in the sequential evaluation process to demonstrate the severity of her impairment. *See* 20 C.F.R. § 404.1520( c ). The severity analysis at step two may do no more than screen out *de minimis* claims. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995). The "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe. *McConnell v. Astrue*, 2008 WL 833968, at *2 (N.D.N.Y.2008) (citing *Coleman v. Shalala*, 895 F.Supp. 50, 53 (S.D.N.Y.1995)).

"When evaluating the severity of mental impairments, the regulations require the ALJ to apply a 'special technique' at the second and third steps of the review, in addition to the customary sequential analysis." *Lint v. Astrue*, 2009 WL 2045679, at *4 (N.D.N.Y. 2009) (citing *Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a)).  First, the ALJ must evaluate the claimant's symptoms, as well as other signs and laboratory findings, and determine whether the claimant has a "medically determinable mental impairment."  20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1); *see also Dudelson v. Barnhart*, 2005 WL 2249771, at *12 (S.D.N.Y. 2005).  If a medically determinable impairment exists, the ALJ must "rate the degree of functional limitation resulting from the impairment [ ]."  20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).   This process requires the ALJ to examine all relevant clinical and laboratory findings, as well as the effects of the symptoms on the claimant, the impact of medication and its side effects, and other evidence relevant to the impairment and its treatment. 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1).  The ALJ must rate the degree of the claimant's functional limitation in four specific areas, referred to as "Paragraph B" criteria: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  The ALJ rates the first three areas on a five-point

scale of "none," "mild," "moderate," "marked," and "extreme," and the fourth area on a four-point scale of "none," "one or two," "three," and "four or more." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).  If the first three areas are rated as "none" or "mild," and the fourth as "none," the ALJ will conclude that the mental impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

A diagnosis of a mental impairment, such as depression, without more, does not suggest that a plaintiff's mental impairment severely impairs his performance of any major life activity. *See Torres v. Astrue*, 550 F.Supp.2d 404, 411 (W.D.N.Y. 2008).  The medical evidence must show that the mental impairment precludes a plaintiff from performing basic mental work activities.  *See Snyder v. Astrue*, 2009 WL 2157139, at *4 (W.D.N.Y. 2009).  Moreover, evidence that medication provides relief from the severity of a mental condition can provide substantial evidence to support a finding that a plaintiff is not disabled.  *Pennay v. Astrue*, 2008 WL 4069114, at *5 (N.D.N.Y. 2008).

In this matter, plaintiff claims that her anxiety and depression are severe impairments because she reported these symptoms to her treating physician, Dr. William Mayer who prescribed medication.  Plaintiff also relies on the opinions of Dr. Annette Payne, a consultative examiner, in support of her argument that the ALJ erred when he found that her anxiety and depression were non-severe impairments.

The medical evidence regarding anxiety and depression is extremely limited.  In October 2007 and August 2008, Dr. Payne performed a psychiatric evaluation of plaintiff at the request of the agency.  Dr. Payne noted that plaintiff was a "binge drinker" who had been to rehabilitation for her alcohol use.  Upon examination, Dr. Payne found plaintiff's affect and mood "anxious and

depressed".  (T. 428).  Dr. Payne opined that plaintiff could follow and understand simple

directions and instructions and perform simple tasks.  The doctor noted that plaintiff had

problems with attention and concentration, difficulties with new tasks, complex tasks and making

appropriate decisions. Plaintiff also was noted as having difficulties relating to others and dealing

with stress.  Dr. Ruback diagnosed plaintiff with depressive disorder and "generalized anxiety

disorder". (T. 430).

Plaintiff did not seek treatment or make any complaints relating to anxiety or depression

to any treating physician or therapist, until January 2, 2009.  (T. 548).  On January 2, 2009, during

plaintiff's initial visit with William D. Mayer, M.D., a physician at Mayer and Cope Family

Practice, LLP,  plaintiff complained of stress in her personal life causing her to drink on the

weekends.  However, Dr. Mayer noted that plaintiff "does not feel depressed, irritable, does not

have difficulty sleeping". (T. 548).  Dr. Mayer diagnosed plaintiff with questionable anxiety

disorder. (T. 549).  On March 16, 2009, plaintiff indicated that she had "gone back to drinking"

due to stress.  (T. 550).  The doctor again noted, "does not feel depressed, irritable, does not have

difficulty sleeping".  Dr. Mayer prescribed Fluoxetine for plaintiff's anxiety and depression.[2]  (T.

551).  On May 11, 2009, plaintiff stated that she was "doing well on her medication" and that she

"has not had mood swings, been feeling depressed or sad".  (T. 546).        In the decision, the

ALJ did not discuss plaintiff's anxiety.  However, with regard to depression, the ALJ found:

> . . . no evidence that the claimant's alleged depressive disorder is
> consistent with a severe impairment, as contemplated in 20 CFR
> 404.1521.  Although the claimant reports history of depression,
> records indicate that the claimant has received no psychological
> counseling or treatment. (T. 17).

---

[2] Fluoxetine (Prozac) is used to treat depression.  http://www.ncbi.nlm.nih.gov (last visited June 6, 2012).

The ALJ discussed Dr. Payne's opinions and Dr. Mayer's examinations and concluded, "the Administrative Law Judge finds no evidence that the claimant lacks the ability to carry out basic work-related functions such as understanding and executing simple instructions, using judgment, responding appropriately to others, or dealing with changes in a routine work setting". The ALJ also discussed the Paragraph "B" criteria and concluded that, "[t]he claimant's medically determinable mental impairments of depression and alcohol abuse considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore not severe". (T. 18).

Based upon a review of the record, the Court finds that substantial evidence supports the ALJ's decision.  Plaintiff filed her application for benefits in May 2007 and failed to mention anxiety or depression as disabling conditions in her application for benefits .  For nearly two years, plaintiff did not make any complaints regarding depression or anxiety and did not seek treatment for anxiety or depression.  Moreover, her complaints of anxiety and depression were to her family practitioner, not a specialist.  During her administrative hearing, plaintiff made no complaints regarding anxiety or depression and admitted that she was never examined or treated by a psychologist, psychiatrist or counselor and was never referred to a mental health specialist by any of her treating physicians.[3]  (T. 41).  While Dr. Mayer diagnosed plaintiff with anxiety and Dr. Payne diagnosed plaintiff with depression and anxiety, neither physician opined that the impairments were "severe" or that it would prohibit plaintiff from performing basic work activities.  Indeed, Dr. Payne opined that plaintiff "can follow and understand simple directions and instructions and perform simple tasks".  (T. 429). The record also establishes that medication provided plaintiff with relief.  In May 2009, Dr. Mayer noted that plaintiff was doing well on

---

[3] Plaintiff testified that she sought treatment at a mental health clinic in 2001, nearly six years before she ceased working and filed for disability benefits.  There is no evidence of that treatment in the record.

medication. (T. 546).  During the administrative hearing, plaintiff testified that Fluoxetine "helps her". (T. 41).  Plaintiff fails to offer any evidence that would support the conclusion that Fluoxetine did not effectively treat her symptoms or that she remained severely impaired despite the medication. *See Serriani v. Astrue*, 2010 WL 786305, at *4 (N.D.N.Y. 2010).   Plaintiff also testified that she is able to interact with family members and the community and that she attends church on a routine basis.

Consequently, the Court finds that there is substantial evidence to support the ALJ's decision that plaintiff's anxiety and depression were non-severe impairments that did not prevent her from engaging in substantial gainful activity.

**II.     Assessment of Medical Opinion Evidence**

Plaintiff acknowledges that Dr. Payne was not a treating physician but argues that the ALJ's evaluation of Dr. Payne's opinion is insufficient as a matter of law.  Plaintiff contends that Dr. Payne is a specialist in social security disability and psychiatry and, "her opinion is supported by her factual findings and psychiatric exam."  Plaintiff also claims Dr. Payne's assessment is consistent with "Dr. Mayer giving [plaintiff] Fluoxetine for her depression".  (Dkt. No. 10, p. 14).

The treating physician rule does not apply to consulting doctors.  *See Jones v. Shalala*, 900 F.Supp. 663, 669 (S.D.N.Y.1995); *see also Limpert v. Apfel*, 1998 WL 812569, at *6 (E.D.N.Y.1998).  The weight afforded a consultative opinion depends upon the thoroughness of the underlying medical examination and the degree of light the opinion sheds on the conflicting assessment of the treating physician.  *Gray v. Astrue*, 2009 WL 790942, at *10-11 (N.D.N.Y. 2009) (citation omitted). While an ALJ must give "good reasons" if he does not give a treating physician's opinion sufficient weight, there is no similar requirement for consulting physicians. *Id*. (citing *Limpert*, 1998 WL 812569, at *6).

Here, the ALJ discussed Dr. Payne's opinion:

> As for the opinion evidence, the Administrative Law Judge does not find that the opinion of Dr. Payne, a consultative examiner, is of significant probative value. In her reports of October 2007 and August 2008, Dr. Payne determined that the claimant would have problems sustaining concentration and attention, interacting with others, learning new tasks, and making appropriate decisions. The Administrative Law Judge finds no support for these restrictions. The claimant has never undergone psychiatric counseling or treatment, other than alcohol treatment, despite allegations of depressive symptomatology. Further, when examined by Dr. Mayer, the claimant denied experiencing any depression or irritability. Moreover, the Administrative Law Judge finds that the restrictions imposed by Dr. Payne are unfounded. (T. 21).

Based upon a review of the record, the Court finds that substantial evidence supports the ALJ's assessment of Dr. Payne's opinions. Dr. Payne's restrictions are contradicted by her own clinical examinations. Upon examination, Dr. Payne noted that plaintiff was, "cooperative", her social skills were fair and her eye contact was appropriate. (T. 428). Dr. Payne observed plaintiff to be alert and oriented, coherent with clear sensorium, recent memory intact and judgment/insight were fair. (T. 428-29). Moreover, Dr. Payne did not provide a functional analysis and failed to provide the necessary information to enable the ALJ to properly assess plaintiff's RFC. *See Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (holding that consulting physicians opinion that the plaintiff's impairment was "lifting and carrying moderate; standing and walking, pushing and pulling and sitting mild" lacked specificity and did not permit the ALJ to make the necessary inference that the plaintiff could perform the exertional requirements of sedentary work). In addition, Dr. Payne's opinion is not supported by the medical evidence as a whole. To wit, Dr. Mayer noted that plaintiff did not have difficulty sleeping and denied depression or irritability. Moreover, Dr. Mayer noted, and plaintiff admitted, that her condition improved with medication. Finally, plaintiff's testimony belies Dr. Payne's opinions. Plaintiff

testified that, "I'm great on the computer. . . everybody asks me to write for them".  Plaintiff

attended church twice a week, was the President of a local volunteer organization and attends

functions such as anniversary parties.  (T. 44).

Based upon a review of the Administrative Transcript, the Court concludes that the ALJ

properly evaluated Dr. Payne's opinions.  The ALJ was not compelled to afford significant

weight, or any weight, to Dr. Payne's opinions.  Thus, remand is not warranted based upon this

issue.

**III.     Credibility**

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding

disabling pain and to arrive at an independent judgment, in light of medical findings and other

evidence, regarding the true extent of the pain alleged by the claimant."  *Marcus v. Califano*, 615

F.2d 23, 27 (2d Cir.1979).  If plaintiff's testimony concerning the intensity, persistence or

functional limitations associated with his impairments is not fully supported by clinical evidence,

the ALJ must consider additional factors in order to assess that testimony, including: 1) daily

activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and

aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5)

other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§

404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).  The issue is not whether the clinical and objective

findings are consistent with an inability to perform all substantial activity, but whether plaintiff's

statements about the intensity, persistence, or functionally limiting effects of her symptoms are

consistent with the objective medical and other evidence.  *See* SSR 96–7p, 1996 WL 374186, at

*2 (SSA 1996). One strong indication of credibility of an individual's statements is their

11

consistency, both internally and with other information in the case record.  SSR 96–7p, 1996 WL 274186, at *5 (SSA 1996).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony. *Saxon v. Astrue*, 781 F.Supp.2d 92, 105 (N.D.N.Y. 2011) (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).  An ALJ rejecting subjective testimony must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.  *Melchior v. Apfel*, 15 F.Supp.2d 215, 219 (N.D.N.Y.1998) (quoting *Brandon v. Bowen*, 666 F.Supp. 604, 608 (S.D.N.Y.1987) (citations omitted)).  The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *Howe–Andrews v. Astrue*, 2007 WL 1839891, at *10 (E.D.N.Y.2007).

Plaintiff claims that the ALJ's credibility assessment is flawed because he failed to discuss the location, duration and frequency of plaintiff's symptoms or her medication and treatment. The ALJ found:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible (T. 21).

Contrary to plaintiff's contentions, the ALJ, citing to SSR 96-7p, discussed plaintiff's pain and symptoms noting, "claimant reported experiencing stomach problems including vomiting and bleeding" and impaired sleep and concentration. (T. 21).  The ALJ rejected plaintiff's allegations citing to her hospitalization for portal vein and mesenteric vein thrombosis and her subsequent treatment with Dr. Vinay Sood, a gastroenterologist.  Specifically, Dr. Sood noted in a follow up

12

visit that plaintiff reported feeling "completely normal" and denied experiencing any symptoms. The ALJ also discussed objective findings including a December 2007 CT scan that revealed "resolution of venuous thromboses".  The ALJ also noted that plaintiff reported no abdominal pain to Dr. Mayer during her initial visit in January 2009.  The ALJ concluded, "claimant [does not] experience[] ongoing symptoms of such frequency, intensity or duration as to render her incapable of performing substantial gainful activity".  (T. 21).

"[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, as was not the case here, is not a broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (the plaintiff's prescription for Lortab was inconsequential to the ALJ's decision because the record reveals that the plaintiff was prescribed Lortab on only one occasion for an injury unrelated to the plaintiff's subjective complaints of neck pain).  Although the ALJ did not expressly reference plaintiff's prescription for Nexium, the Court finds no error or reason to remand in this respect.  During the hearing, plaintiff testified that she was treating her stomach pain with Nexium and that the medication "helped".  Plaintiff described her symptoms:

> Q.   You described sickness, and stomach pains, and vomiting.  Is that something that occurs frequently?
>
> A.   Yes.  But like I say, it's been pretty good the last few months. I'm really kind of happy with myself.  Usually, I don't want to eat.  They still tell me I eat like a bird, but I think I'm eating a lot better 'cause there'd [sic] be days and weeks that I wouldn't eat.  I just could not eat. (T. 39).

Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ correctly applied the standards, enumerated in 20 C.F.R. § 404.1529(c)(3)(i)-(iv), in assessing plaintiff's credibility.  "To the extent the ALJ's RFC findings rested on his determination of

13

plaintiff's credibility, it was 'within the discretion of the [Commissioner] to evaluate the credibility of plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence regarding the true extent of such symptomatology'". *Cohen v. Astrue*, 2011 WL 2565659, at *22 (S.D.N.Y. 2011) (citations omitted). Taken as a whole, the record supports the ALJ's determination that plaintiff was not entirely credible.  The Court finds that the ALJ employed the proper legal standards in assessing the credibility of plaintiff's complaints of pain and adequately specified the reasons for discrediting plaintiff's statements.

## IV.    RFC

Plaintiff argues that the ALJ erred when he failed to consider the restrictions imposed by Dr. Kautilya Puri, a consultative examiner, when he formulated plaintiff's RFC.  Plaintiff also claims that the ALJ failed to consider Dr. Payne's non exertional, mental restrictions as discussed in her October 2007 and August 2008 reports.

Residual functional capacity is:

> "what an individual can still do despite his or her limitations....
> Ordinarily, RFC is the individual's maximum remaining ability to do
> sustained work activities in an ordinary work setting on a regular and
> continuing basis, and the RFC assessment must include a discussion
> of the individual's abilities on that basis. A 'regular and continuing
> basis' means 8 hours a day, for 5 days a week, or an equivalent work
> schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96–8p"), 1996 WL 374184, at *2 (S.S.A. July 2, 1996)). In making the RFC determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  The ALJ must consider all the relevant evidence, including medical opinions and

facts, physical and mental abilities, non-severe impairments, and plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e).

Here, the ALJ concluded that plaintiff could perform the full range of "light work" as described in 20 CFR 404.1567(b). Specifically, the ALJ found that plaintiff could walk, stand and sit for six hours per workday and lift 20 pounds occasionally and 10 pounds frequently.

### A.    Dr. Puri

On October 4, 2007, Kautilya Puri, M.D. conducted an internal medicine examination of plaintiff at the request of the agency. (T. 432). Plaintiff stated that she had a history of Lyme's disease, blood clots in her portal veins, a cyst in her abdomen, gastritis, lumbosacral spine surgery, depression and anxiety. Upon examination, Dr. Puri noted that plaintiff's gait and station were normal, squat was full and plaintiff was able to ambulate without difficulty. Plaintiff exhibited full flexion and extension of her cervical and lumbar spine, straight leg raising was negative and plaintiff had a full range of motion in her extremities. Plaintiff was diagnosed with high blood pressure, depression and alcohol use. (T. 434). Dr. Puri opined that plaintiff had no objective limitation with communication, fine motor or gross motor activity. No objective limitations of her gait or activities of daily living. However, Dr. Puri recommended that plaintiff not carry out any strenuous activity and that she be seen by a psychologist. (T. 435).

On August 13, 2008, plaintiff had a follow up examination with Dr. Puri. (T. 526). At that time, plaintiff claimed that she was experiencing low back pain that was sharp and increased with moving, bending, lifting and pushing. Upon examination, Dr. Puri noted that plaintiff's gait and stance were normal, she walked without difficulty, her squat was mildly decreased. Plaintiff exhibited full flexion and extension and rotation in her cervical and lumbar spine, full range of motion in her extremities and straight leg raising was negative. Plaintiff did not display any

redness, heat, swelling or effusion.   Dr. Puri diagnosed plaintiff with low back pain, high blood pressure and depression.  Dr. Puri concluded that plaintiff had no objective limitation to communication, fine motor or gross motor activity but mild limitations in squatting, bending, stooping and kneeling.  Plaintiff had no objective limitations to her gait or activities of daily living.  Dr. Puri recommended that plaintiff avoid lifting any heavy weights on a short term basis secondary to her history and that she follow with a psychologist. (T. 529).

Plaintiff claims that the ALJ should have included these "mild limitations" in the assessment and further, that these limitations would render plaintiff unable to perform light work.[4] Based upon a review of the record, the Court disagrees and finds the that the RFC assessment is supported by substantial evidence.  Dr. Puri's "restrictions" are not supported by her clinical findings.  Indeed, Dr. Puri's physical examinations of plaintiff were remarkably normal.  The doctor noted that plaintiff exhibited a full range of motion in her lumbar spine and extremities with no atrophy and full strength.

Furthermore, Dr. Puri's opinions are not supported by the medical record.  None of plaintiff's treating physicians opined that plaintiff exhibited such postural limitations.  On January 22, 2008, plaintiff was examined by Russell N.A. Cecil, M.D. for complaints of low back pain with pain in her left leg.  Upon examination, Dr. Cecil noted that plaintiff had a normal gait, could heel/toe walk, SLR was negative, reflexes were equal and plaintiff had good motor strength in her extremities.  Dr. Cecil diagnosed plaintiff with a possible recurrent disc herniation. (T. 524).  Dr. Cecil did not present any opinion regarding any limitations or restrictions.  On January 29, 2008, Dr. Cecil noted that plaintiff had an MRI which revealed a small residual or recurrent disc

---

[4] SSR 96-9p provides:  A non-exertional limitation is an impairment-caused limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling.

herniation but he also noted that, "her back is feeling much better" and she, "is much less uncomfortable".  Plaintiff's physical examination was normal and Dr. Cecil diagnosed plaintiff with degenerative disc disease.  (T. 523).  Dr. Cecil did not opine or conclude that plaintiff suffered from any restrictions that would prevent her from performing work related activities.

Dr. Puri's assessment are also contradicted by plaintiff's own testimony:

> Q.   And bending down, stooping down, squatting down?
>
> A.   If I just have to do it quick, I'm fine; but, if you had me do it repetitively, if I had to do it to keep picking up leaves or something, to put them in a bag, I couldn't do it.
>
> Q.   And I am asking, you know, in a work-related context - -
>
> A.   Uh-huh.
>
> Q.   - - whether those kinds of activities could be done - -
>
> A.   Right.
>
> Q.   You know, done on the job.
>
> A.   Right.
>
> Q.   Not just the - - you know, if you could it one time - -
>
> A.   Right, right.  Like , if i had to go get a - -
>
> Q.   If it were part of what you were required to do, right.
>
> A.   - - file out of a bottom drawer, I could do that.  But if you ask me to , like rearrange the bottom drawer, I couldn't do it. (T. 43-44).

Thus, the limitations expressed by Dr. Puri are not supported by the record and the ALJ did not err when he omitted these restrictions from the RFC assessment.  However, even assuming plaintiff suffered from these limitations, these mild limitations are consistent with light work.  Light work requires occasional stooping or bending, occasional meaning up to one third of

an eight hour day. *Molina v. Barnhart*, 2005 WL 2035959, at *8  (S.D.N.Y. 2005) (citing SSR 83-14 at *4; SSR 96-9p, at *8) . "A complete inability to stoop would significantly erode the unskilled sedentary occupation base and a finding that the individual is disabled would usually apply." *Id*. (quoting SSR 96-9p at *8).  The ALJ was not compelled to incorporate squatting, bending, stooping and kneeling limitations in plaintiff's RFC assessment. *See Williams v. Astrue*, 2009 WL 1706664, at *4 (W.D.N.Y. 2009).

B.     **Dr. Payne**

Plaintiff briefly claims that the ALJ erred when he failed to include plaintiff's non-severe impairments including restrictions for depression.  As discussed previously, substantial evidence does not support Dr. Payne's assessments.  In the decision, the ALJ specifically stated that in determining the RFC, he considered the entire record and "translated the "B" criteria findings into work-related functions in the residual functional capacity assessment.  (T. 19).   The ALJ thoroughly discussed plaintiff's depression noting that plaintiff had no treatment for depression and during her most recent examination with Dr. Mayer, stated that she was not experiencing any depressive symptoms or difficulty sleeping. (T. 18).   Furthermore, the ALJ noted that plaintiff testified that she is able to interact with family members, shop, run errands, manages her own finances and interact with the community. (T. 18).  The ALJ properly considered plaintiff's alleged limitations and substantial evidence supports his decision to omit the restrictions from the RFC analysis.

Accordingly, the Court finds that the ALJ's RFC assessment is supported by substantial evidence.

V.     **PAST RELEVANT WORK**

Plaintiff claims that the ALJ erred at the fourth step of the analysis when he failed to include the specific Dictionary of Occupational Titles Code for work as an office manager.[5]  The Commissioner disagrees and contends that plaintiff's RFC is consistent with the work of an office manager as generally performed in the national economy.

"[I]n the fourth stage of the SSI inquiry, the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." *Stanton v. Astrue*, 2009 WL 1940539, at *9 -10  (N.D.N.Y. 2009) (citing *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir.2003) (citing SSR 82-62)). A claimant is not disabled if she can perform her past relevant work, either as she actually performed it, or as it is generally performed in the national economy. *Id*. (citing *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981) (noting that "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally")).  A claimant may not obtain disability benefits if the claimant can still perform her past work "either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 1520.   Past relevant work is "either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy."  *Id*. (citing Social Security Ruling 82-62, Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, In General ("SSR 82-62"), 1982 WL 31386, at *3 (S.S.A.1982)).

"Determination of the claimant's ability to perform past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence

---

[5] Plaintiff also argues that the restrictions imposed by Drs. Payne and Puri prevent her from performing her past relevant work.  However, the Court has already discussed these restrictions and concluded that the RFC analysis was supported by substantial evidence.

establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy." *Speruggia v. Astrue*, 2008 WL 818004, at *12-13 (E.D.N.Y. 2008). "Pursuant to both case law and [SSR] 82–62, in order to determine at step four whether a claimant is able to perform her past [relevant] work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities." *Sanderson v. Astrue*, 2011 WL 1113856, at *9 (N.D.N.Y. 2011) (citation omitted). The disability claimant bears the burden of proving that neither alternative applies. *See Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." (citation omitted)). If the ALJ finds that the claimant cannot perform the functional demands and duties of her past job as she actually performed it, he will consider whether the claimant can perform the functional demands and duties of the occupation as generally required by employers throughout the national economy. *Scharber v. Comm'r of Soc. Sec.* 411 F. App'x 281, 282 (11th Cir. 2011) (citing See SSR 82–61, 1982 WL 31387 (1982)). An ALJ may rely on information contained in the Dictionary of Occupational Titles ("DOT") to determine whether a claimant can perform her past relevant work as it is generally performed in the national economy. *Id.* "[W]here the claimant's specific prior job might have involved functional demands and duties significantly in excess of those generally required for such work by employers in the national economy, the claimant must still demonstrate that, in addition to being unable to perform the excessive functional demands actually required by her former job, she cannot perform the functional demands and job duties of the position as

generally required by employers nationwide." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x

772, 775 (11ᵗʰ Cir. 2010) (citing SSR 82-61 (1982)).

Here, the ALJ concluded:

> Work as an office manager is customarily sedentary in nature. The
> claimant reported that this occupation required her to sit for eight
> hours per workday. However, the claimant further stated that she was
> required to lift between 25 and 50 pounds. As it is customarily
> performed in the national economy, work as an office manager
> requires an individual to lift no more than 10 pounds occasionally and
> 5 pounds frequently. Since the claimant retains the residual capacity
> to perform light work, she remains capable of performing her past
> relevant work as an office manager as it is customarily performed in
> the national economy.
>
> In comparing the claimant's residual functional capacity with the
> physical and mental demands of this work, the undersigned finds that
> the claimant is able to perform it as generally performed in the
> national economy. (T. 22).

Plaintiff described her work as an office manager as follows: lifting boxes everyday;

heaviest weight lifted: 50 lbs.; weight frequently lifted: 25 lbs.; sat for 8 hours a day; walked for

.5 hours and stood for .5 hours. (T. 117). Therefore, the issue is not whether plaintiff can do her

past relevant work as she actually performed it, rather, the issue is whether the ALJ erred when he

concluded that plaintiff can still perform work as an office manager as the national economy

generally performs it. *See Barker v. Astrue*, 2012 WL 476403, at* 9 (10ᵗʰ Cir. 2012) (the ALJ

properly based his finding that plaintiff was not disabled on her ability to perform past relevant

work as it is performed in the national economy). During the administrative hearing, plaintiff

testified that she could return to her past job if she was given accommodations. Plaintiff testified,

"if I could get up when I wanted to, and walk when I wanted to, or take a break, or sit down, I'd

be okay". (T. 47).

As discussed above, the ALJ's RFC analysis and conclusion that plaintiff could perform the full range of "light work" is supported by substantial evidence.  In the U.S. Department of Labor's Dictionary of Occupational Titles, "Manager, Office" is described as "sedentary strength, [requiring] the exertion of force 'to 10 lbs. occasionally, or a negligible amount of force frequently to lift, carry, push, pull, or move objects.' " *Bonenfant v. Standard Ins. Co.,* 2011 WL 3904300, at *2 (E.D.Cal. 2011); *see also Ricca v. Astrue,* 2010 WL 2991481, at *3 (M.D.Fla. 2010) (although the plaintiff described her particular office manager job as medium work, the ALJ did not err in relying on the Dictionary of Occupational Title's (DOT) description of the job of office manager as sedentary work as performed in the national economy); *see Schiano v. Astrue*, 2009 WL 1770152, at *27 (S.D.Fla. 2009) (office manager (169.167.034) is a skilled, sedentary position).  Consequently, the Court finds substantial evidence to support the ALJ's determination that plaintiff could perform her past relevant work as ordinarily required by employers throughout the national economy.

Plaintiff's conclusory claim that the ALJ erred by failing to include the appropriate DOT code lacks merit.  While the ALJ did not specifically identify the DOT code for office manager, he noted that the job as a "sedentary job".  Plaintiff does not dispute that the codes for office manager are sedentary and light. (Dkt. No. 10, p. 18).  This Court has determined that the ALJ's decision regarding plaintiff's capacity for light work is supported by substantial evidence.  Thus, the RFC assessment does not conflict with the DOT code.  Moreover, plaintiff does not cite to or argue that there is any conflict between the DOT job definitions and ALJ's decision.  Therefore, the ALJ's failure to include a specific code is harmless error.

**CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED**, that the decision denying disability benefits be **AFFIRMED**; and it is further

**ORDERED** that plaintiff's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Dated:  June 11, 2012
      Albany, New York

Mae A. D'Agostino
U.S. District Judge